IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MAKIM NEWMAN,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>STATE OF HAWAIʻI, *et al.*,<br><br>　　　　Defendants. | Civil No. 24-00140 MWJS-RT<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT |

## ORDER DISMISSING SECOND AMENDED COMPLAINT

On June 28, 2024, pro se Plaintiff Makim Newman filed his second amended complaint (SAC) against the State of Hawaiʻi and the United States of America. ECF No. 10. Although the SAC has improved upon the original complaint's allegations, the Court finds that it still does not adequately state a claim. Accordingly, the Court DISMISSES the SAC. While the Court does not now grant leave to file another amended complaint, it will allow Newman to submit a letter explaining why he should be granted further leave to amend. He must do so by August 26, 2024.

//

//

//

## **DISCUSSION**

Newman commenced this action in March 2024 by filing a complaint and an application to proceed in forma pauperis.  The Court granted Newman in forma pauperis status.  ECF No. 5.  But it also screened Newman's complaint, as the Court is required to dismiss any complaint that, among other things, fails to state a claim for relief.  28 U.S.C. § 1915(e)(2)(B).  And because Newman's original complaint lacked factual allegations, the Court dismissed it for failure to state a claim and granted Newman leave to amend.  ECF No. 5.

Newman filed his first amended complaint in April.  ECF No. 6.  Although it improved upon the original complaint's allegations, it still failed to state a claim.  ECF No. 9.  The Court again dismissed the complaint and granted Newman leave to amend.  *Id.*

The second amended complaint—which the Court now screens—was filed in June.  For the reasons discussed below, it too fails to state a claim.

1.  The SAC's allegations appear to center around an arrest for trespass.  The SAC alleges that Newman and his daughter are of Menehune heritage and that they practice Menehune religion.  The SAC claims that they resided on a plot of state-owned land on Kauaʻi, where they engaged in religious practices such as "God writing, mound building, God and Ancestral worship, divine initiation, [and] scarification."  ECF No. 10, at PageID.88.  At some point—it appears to be in

April 2022—officials arrested Newman for trespass.  *See* ECF No. 10-2, at PageID.97.  He pled no contest, and the state trial court fined Newman $100.  *Id.*  Newman now sues, claiming that he "suffered damages and emotional trauma because he was charged and arrested."  ECF No. 10, at PageID.93.  Newman argues that "[n]o one should go to jail and be charged [for] praising the Lord."  *Id.*

      2.  The Court first considers whether the SAC names a proper defendant.  Although the SAC does not include a case caption, its first page identifies two defendants:  the State of Hawaiʻi and the United States of America.  *Id.* at PageID.86.[1]  Neither is a proper defendant.  As the Court explained in its last order, both the State of Hawaiʻi and the United States enjoy sovereign immunity, which means that they cannot be sued without their consent.  *See* ECF No. 9, at PageID.78 (citing *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984)).  The SAC does not identify any waiver of sovereign immunity that might apply to this case, and none is readily apparent.

      At one point, the SAC suggests that the Department of Land and Natural Resources (DLNR) is a defendant.  *See* ECF No. 10, at PageID.89 ("(Defendant

---

[1] Although prior complaints included the County of Kauaʻi as a defendant, the SAC does not.  As the SAC explains, "Plaintiff Newman understands the gravity of the [County] officers['] situation," and he believes the "[o]fficers show[ed] excellent humanitarian actions towards plaintiff needs and concerns."  ECF No. 10, at PageID.94.

3

one) The Department of Land and Natural Resources . . . ." (emphasis omitted)). But sovereign immunity also bars a suit against the DLNR, for "agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1989).

Elsewhere, the SAC might be identifying as defendants certain unnamed officers of DLNR. *See* ECF No. 10, at PageID.87 ("(Defendant one) State of Hawaii DLNR officers who were led by several Supervisors during the time of Plaintiff['s] arrest destroyed Newman temple."). Sometimes, when a plaintiff cannot know the identity of a potential defendant prior to bringing suit, they may file a complaint naming a placeholder defendant—typically indicated by the term "John Doe." In some cases, a plaintiff may be "given an opportunity through discovery to identify the unknown defendants." *Gillepsie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

Because of the Court's obligation to liberally construe pro se plaintiffs' pleadings, *see Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003), the Court will read the SAC as naming John Doe defendants who are DLNR officers.

3. The Court next considers whether the SAC states a claim. To state a claim, a complaint must allege more than mere "labels and conclusions." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a complaint's allegations must be specific enough to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the Court has construed the SAC as being brought against state officers, the Court further construes the SAC's claims as being brought pursuant to 42 U.S.C. § 1983, which creates a right to sue state officers for civil rights violations.

  The SAC's core claim appears to be that the arrest was unlawful because Newman was on the land for religious practices. In particular, the SAC can be read as asserting two First Amendment claims. First, the SAC claims that Newman's arrest was unlawful because he had a First Amendment right to engage in religious practice on the land. *See* ECF No. 10, at PageID.86 (citing "First Amendment Fundamental Freedoms"); *id.* at PageID.87 (discussing "the area [Newman] was using . . . for religious purposes and activities under direct orders of Menehune Ancestors and the Lord"); *id.* at PageID.92 (requesting "[c]lean record of Simple Trespassing"). Second, the SAC might also be asserting a First Amendment retaliation claim, arguing that Newman was arrested for trespass because of his Menehune religion while similarly situated non-Menehune individuals would not have been. *See id.* at PageID.88 (alleging that

officers "made [a] mockery of plaintiff Newman['s] religious lifestyle"); *see Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

These claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that, when a plaintiff seeks to "recover damages for [an] allegedly unconstitutional conviction," a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid . . . , or called into question by . . . a writ of habeas corpus." *Id*. at 486-87. Put differently, a civil action for damages that challenges a conviction or sentence may proceed only if the conviction or sentence has been overturned in some way.

Because the SAC does not make such a showing here, *Heck* bars this case from proceeding. If successful, the SAC's First Amendment arguments would undermine the basis for Newman's arrest, as they ask the Court to conclude that Newman's arrest, conviction, and sentence were improper. *Heck* says that such a claim may proceed only if the underlying criminal case ended in Newman's favor. The SAC, however, makes no such showing. The proper time to directly challenge the basis for Newman's arrest was in the criminal proceeding itself, or in a collateral challenge to that proceeding, not in this subsequent civil action for damages. Accordingly, to the extent that the SAC's claims are seeking damages for what he alleges was an unlawful arrest and conviction, they are dismissed.

6

Liberally construed, the SAC also appears to request an injunction restoring Newman's access to the state land on which he was arrested. The SAC might specifically be arguing that both the First Amendment and Newman's status as a Menehune entitle him to access the land. *See* ECF No. 10, at PageID.89 ("Newman is still suffering damages from not fulfilling religious duties."); *id.* at PageID.92 (requesting "Constitutional Protection to fulfill Religious duties"); *id.* at PageID.87 (calling the land "Menehune territory").

Neither argument is successful, as Newman has not made a showing that he has a legal right to be on the land. First, while the First Amendment protects citizens' right to freely exercise their religion, it does not offer citizens an insuperable right to use public lands for religious purposes. Citizens must still follow neutral, generally applicable laws—like state trespass laws. *See Fulton v. City of Philadelphia,* 593 U.S. 522, 533 (2021) (discussing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990)). Accordingly, the fact that Newman may wish to be on state land for religious purposes does not entitle him to an injunction that exempts him from Hawaii's general prohibition on trespassing.

Second, while the Hawaiʻi Constitution offers some protection for the cultural and religious practices of Native Hawaiians, *see* Haw. Const. art. XII, § 7, this privilege "is not absolute," *State v. Pratt*, 127 Hawaiʻi 206, 213, 277 P.3d 300, 307 (2012). Indeed, the Hawaiʻi Supreme Court affirmed the conviction of a man

7

who, in violation of DLNR rules, "established a residence" in a state park and "cleared entire areas of the valley in order to replant them with other species" as part of his "native Hawaiian practice." *Id.* at 218, 277 P.3d at 312.  Accordingly, even assuming that Newman is Native Hawaiian within the meaning of the Hawaiʻi Constitution, this privilege does not automatically entitle Newman to an injunction that lets him use state lands in violation of state rules and laws.  Because the SAC fails to allege ongoing harm to a legal right, it fails to state a claim for injunctive relief.

      Finally, the SAC appears to additionally argue that Newman cannot drive in Hawaiʻi, in violation of his right to travel.  ECF No. 10, at PageID.90 ("Newman cannot travel with an automobile to freely transport property without commercial use and operation in the State of Hawaii (Defendant one).").  The SAC requests "[p]rotection to freely travel within the State of Hawaii and United States." *Id.* at PageID.92.  As the Court explained in its last order, however, the constitutional right to travel does not include a "fundamental right to drive a motor vehicle." *Miller v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999).

      The SAC does not state a possible claim for relief.  The complaint is therefore DISMISSED.

//

//

## **CONCLUSION**

For the foregoing reasons, the Court DISMISSES Newman's second amended complaint without prejudice. Because the Court has twice allowed Newman to file an amended complaint, and because the SAC still faces substantial threshold hurdles, the Court does not grant Newman leave to amend. If Newman wishes to continue pursuing this action, he should submit a letter to the Court seeking leave to amend by no later than August 26, 2024. In any such letter, Newman should do the following things:

(1) Identify the defendants he wishes to sue in this action. As discussed above, neither the State of Hawaiʻi, the Department of Land and Natural Resources, nor the United States of America are proper defendants. If Newman wishes to sue state officers, he should attempt to identify the officers to the best of his ability, and he should explain their involvement in the facts of his case.

(2) Identify what relief he is seeking. In this order and its two prior orders, the Court identified several challenges with the complaints' claims for relief. When considering what relief he would like to seek, Newman should carefully consider the Court's guidance.

(3) Supplement his factual allegations. In detail, Newman should describe the facts that support his claims for relief.

Newman is cautioned that if his request for leave to amend fails to address the deficiencies identified in this Order, his action may be dismissed with prejudice. If Newman does not file a letter requesting leave to amend by August 26, 2024, this case will be automatically dismissed.

IT IS SO ORDERED.

DATED: July 26, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge